No. 26,237.

SQUIRE E. TEAS, *Appellee*, v. THE CLOVERLEAF LIFE AND CASUALTY
COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

1. INSURANCE—*Accident—Construction of Rider Attached to Policy.* Under
the terms of an accident policy, it is held that a stipulation in a rider
to the effect that the *pro rata* clause of the policy shall not apply in any
case of death or dismemberment is applicable to standard provision num-
ber seventeen of the policy, which is deemed to be the only *pro rata* clause
in it, and therefore the rider does not apply to other stipulations in the
policy.

2. SAME—*Payment in Lump Sum.* The rendition of the judgment payable in
a lump sum instead of in installments is held to be without prejudicial error.

Appeal from Riley district court; FRED R. SMITH, judge. Opinion filed June 6,
1925. Reversed.

*J. E. McFadden, O. Q. Claflin, Jr.,* both of Kansas City, and *Ross J. Ream,*
of Kansas City, Mo., for the appellant.

*Edwin E. Brookens,* of Topeka, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: Squire E. Teas recovered a judgment for $2,500
upon an accident policy from the Cloverleaf Life and Casualty
Company, and defendant appeals.

By reason of an accident the plaintiff suffered the loss of a hand,
and when proof of loss was made the defendant admitted liability
to the extent of $1,875, but contended that under the classifications
of the policy, the hazardous occupation insured against, and the rates
applicable to such occupations, the plaintiff was entitled to no more
than the premiums paid would have purchased at the prescribed
rates. In the application the plaintiff represented that he was a
manager and bookkeeper of an oil company. That occupation
placed the insured in class "A," and according to the manual measur-
ing rates required the payment of only $9 per quarter. For those
engaged in filling stations selling and handling gasoline the rate
was higher, and under the terms of the policy the insured belonged
in class "B," for which the rate was $12 per quarter.

In his testimony plaintiff stated that he did not say anything
about his work of testing gasoline or of handling and selling it to
customers at the filling station. He said the agent of the insurance

company did not ask for detailed statements as to the work which he did, but he admitted that he was about the filling station selling gas to customers every day, and that he tested and measured gasoline in tanks. This part of his work was not mentioned when the insurance was taken, and when he was asked the question, "What are the duties of your occupation?" his answer was, "Manager and bookkeeper." This answer entitled him to be given a class "A" rate, and his insurance was based on that classification. The policy upon which the action was brought contained. a provision which is called "standard provision one," which provides:

"This policy includes the indorsements and attached papers, if any, and contains the entire contract of insurance except as it may be modified by the company's classification of risks and premium rates in the event that the insured is injured or contracts sickness after having changed his occupation to one classified by the company as more hazardous than that stated in the policy, or while he is doing any act or thing pertaining to any occupation so classified, except ordinary duties about his residence or while engaged in recreation, in which event the company will pay only such portion of the indemnities provided in the policy as the premium paid would have purchased at the rate, but within the limits so fixed by the company for such more hazardous occupation."

On the policy a rider was pasted, which recited:

"*Rider attached to and made a part of the pro rata clause of this policy.* It is hereby agreed that the *pro rata* clause of this policy shall not apply in any case that may arise under this policy for death or dismemberment."

The trial court held that the rider in effect modified the contract in such a way as to take out the stipulations as to classifications and rates therefor in the policy, holding that the rider applied to classifications and rates for dismemberment like that sustained by the plaintiff, and upon that interpretation directed a verdict in favor of the plaintiff for the full amount of the insurance.

What is the *pro rata* clause of the policy and to what provision does the rider apply? Although the provisions of the policy other than the rider are known as standard provisions in general use, no authorities have been cited as to what constitutes the *pro rata* clause of such policies. An examination of the policy shows that the only clause therein relating to prorating is standard provision seventeen, which states:

"If the insured shall carry with another company, corporation, association or society other insurance covering the same loss without giving notice in writing to the company, then and in that case the company shall be liable for only such portion of the indemnity promised as the said indemnity bears to

Teas v. Cloverleaf Life and Casualty Co.

the total amount of like indemnity in all policies covering such loss, and for the return of such part of the premium paid as shall exceed the *pro rata* for the indemnity thus determined."

It is evident that the rider applies only to this provision of the policy. It is stipulated in that clause that if the insured is carrying policies with other insurers covering the same loss, such loss should be prorated among all the insurers, so that the defendant company should only be liable for such proportion of the loss as the indemnity promised bears to the total indemnity of a like kind in all the policies covering that loss, and in such a case the defendant was required to return the insurer the *pro rata* portion of the premium paid. The effect of the rider is that the provision as to prorating, where there is other insurance, does not apply in case of death or dismemberment. Nothing contained in the policy indicates that there was to be a prorating of classifications nor that the insured was to receive more insurance than was covered by the premiums paid. Since there was but one *pro rata* provision in the policy, and by its terms the rider was to apply to no other, it follows that the intention was that there should be no prorating except under provision seventeen, and that there can be no prorating under it in cases of death or dismemberment. The rider did not affect the provisions that the policy was issued in consideration of the statements and agreements contained in the application, neither did it affect the stipulation that the insurance was based on the rates paid, all of which became a part of the contract of the parties, nor did it nullify the provision that the defendant should be liable for only such portion of the indemnity as the premium paid for at the classification rate when the insured was doing more hazardous acts or things than was enumerated in the classification in which he was placed and for which premiums were paid.

We conclude that the court was in error in the interpretation of the policy and in directing a verdict for the entire amount named in the policy. There was testimony tending to show that in the application for insurance the plaintiff had not answered the questions correctly and that under the terms of the policy he was entitled to no more than the premiums paid would purchase, for the kinds of work in which he was engaged; at least there was evidence sufficient on this line to take the case to the jury.

Error is also assigned on the rendition of the judgment requiring payment in a lump sum instead of monthly installments. One of

the provisions of the policy does provide for installment payments in certain cases, but in view of the fact that the defendant acknowledged its liability for $1,875 of the amount as adjudged, and raised no question as to that feature of the judgment on the motion for a new trial, and the further fact that standard provision number nine of the policy was that "All indemnity provided in this policy for loss, other than that of time on account of disability, will be paid within sixty days after receipt of due proof," we are of opinion that the defendant is not entitled to raise that question at this time and that it cannot now be made a ground for reversal.

For error in directing a verdict, the judgment is reversed and the cause remanded for a new trial.